Number 1118-1155, Realtime Data, LLC v. Riverbed Technology, Inc. And again, Mr. Zuri. But let's wait just a moment. Okay. Thank you. Thank you, Your Honors. Kevan Neruzzi for Realtime Data. This appeal involves a single question of law and challenges a single error of law. The board concluded... What Wang, at step 102, shows unidentified data, right? And it tells you what to do with that. So why isn't there a combination between that and Franizac that satisfies the claim? I was hoping you would ask me that. And the answer is, there was. And it failed. And they can't win on that basis. And that's why they never urge it on the appeal. You have to explain yourself. I will. And the reason is because the claims at issue require something very specific. They don't only require analyzing whether the data that has come to you... I'm sorry. They don't simply require the analyzing and then a determination of content-dependent or content-independent. They require that the analyzing not be done solely based on a descriptor. And at step 102, the way that Wang is determining whether that file is a known file type or not is based solely on the descriptors of the file type. And the board found that. We addressed this point in the very last pages of our opening brief. And if you'd like, I could cite you to the portion of the decision where the board covers this. But the crux of it is, the theory based on the combination of Franizac at step 102 is one that they had. But we defeated it because we demonstrated it cannot meet the claim limitations. Because at that stage, the analysis is only based on a descriptor, which the claim limitations expressly forbid. Where do the claim limitations forbid that? So if we go to our opening brief, we've set forth the claim language. Well, let's look at the patent itself. Sure. It is either the last or second to last limitation of the claim. Well, we're talking about the 513 or the 992 here. Both of them have it in all of the relevant claims. Are you referring to the 513? I am referring to the 513. OK. Which claim? Claim one. OK. OK. Where does it say, without reference to a descriptor, whatever you say it says? I am pulling that up. This line's 45 and 46. It's at the very, very end. It states, we're in the analyzing the plurality of data blocks to recognize when the appropriate content independent compression algorithm is to be applied excludes analyzing based only on a descriptor indicative of the any characteristic attribute or parameter. That's not 513. Oh, no. I might have been reading the 992 there. OK. And so where does step 102 say it's only based on the descriptor? That was the board's decision. And where? We obtained testimony from the opposing expert. Where does the board say that? That is at appendix 30. You really should bring the hard copy of the brief and appendix with you. It is easier for us and easier for you if you do that. What page? 30 to 32 and 76 to 77. 30 to 32 and what? And 76 to 77. They're two decisions. And they are very similar to each other. We're on 30 and 32. Well, if you start at the bottom of page 30, appendix 30, they talk about the extensions, sorry, the arguments on both sides. They say patent owner argues that file extensions like those in WANC are descriptors. And then they go on. And at the bottom of 31, they say, we agree with patent owner's position that the file extension names and control information in WANC appear to be descriptors of a data block. Right? And then they say that they're persuaded by the combination of WANC, Matsubara, and Franichak, which is with respect to step 108, not step 102. So step 102 had no combination with Matsubara. It's only at step 108 that Matsubara comes in. And the briefing below is very clear on this point of why the combination of just Franichak and WANC at step 102 can't prevail since what's going on there is analysis based only on the descriptor. Well, I don't see that they say exactly that. Well, Your Honor, I... He says that the file extension names and control information in WANC are descriptors. So where is that saying that they analyze only based on the descriptors? So if you look a little bit higher up on page 31, they're talking about our evidence regarding step 102 of WANC using only a descriptor. That's what that briefing and argument is about, that they're citing. So if you were to pull up the cited pages of the patent owner response or the testimony that is being cited there, it's only with respect to step 102 and WANC using only a descriptor. And, I mean, I can explain this to you so that it has contextual value. A descriptor is exactly what's described on page 31. It's like when you have a Word document and the end of it says .doc, right? So that file name extension, that's a descriptor. Now, maybe that is a Word document. Maybe it's actually a picture document, an image document. You don't know that for sure. It's sort of circumstantial evidence, right? But what is direct evidence is to go into the file and analyze it and look at its contents and then say this has a text and it is in a .doc format, therefore it's a Word document. WANC does not do that at step 102. The claim requires that kind of analysis. So WANC step 102, in combination with Franichide, can never prevail, and the board so found. What the board needed to do was rely on step 108. Well, unless Franichide itself uses something other than a descriptor. Franichide itself is itself also only using a descriptor, actually. So in Franichide, I will say that wasn't a theory, but to answer your point, Franichide, the way that it works is that there is a specific field in each item of data that comes in that has a data type descriptor. And if that type descriptor is there, then Franichide uses content-dependent compression techniques that it's preselected. If that field is empty, therefore there is no descriptor, or if the descriptor is not recognized, then Franichide uses content-independent techniques. So Franichide does not do an analysis of the data that is not based only on the descriptor to determine whether to apply content-dependent or independent. And that's why they didn't have either anticipation or obviousness based on Franichide standing alone or even as a primary reference. Okay, go ahead. So we have to, despite the inconvenience of it, look at step 108. And what happens at step 108 is that they have a motivation to combine that is based on the factual premise that when and if, at step 108, Wang fails to recognize the data type, then and only then someone would be motivated to bring in, a person of steel in the art, would be motivated to bring in this teaching from Franichide of resorting to a content-independent compression technique to deal with the supposed problem of unknown data types. What the evidence showed very clearly, and from both sides, is that at step 108 in Wang, that problem can never occur. The problem of unrecognized data types is not possible at step 108. Okay, but this last step that you referred to in claim one, where do they get that last step? Which reference is relied on for the where-in step? So they are relying on Matsubara to fill in the concept of direct analysis rather than an analysis based on descriptor. They have a three-part combination. And it's Wang, Matsubara, and Franichide at step 108. Okay, but so the last step, just to be clear, the last step, which says, where in the analysis of data to recognize any characteristic, attribute, or parameter excludes analyzing based only on the descriptor. You're saying that analyzing not based only on the descriptor comes from this third reference. That was their contention. That was their theory. And that's the creating of histograms based on certain data. So why can't that be done at step 102? Why can't that be done at step 102? They didn't have such a theory. Your Honor, could and would is the key distinction in this case, right? So like many other cases, many things could be done in many places. But the question is, would they have been done? Would there have been a motivation? They never even put up that theory about step 102. Frankly, I've never thought about that. And I have no idea why someone would want to do that. There's no problem at step 102 that would cause, the method of weighing at step 102 is literally look at the file extension. If I know it, if it's like on a list of friendly, so to speak, you know, pass it along from step 102 downward towards step 108. If it's on a list of unknowns, send it over to step 104. There's no reason to go into deeper analysis at step 102. Could someone have jammed something in there? It's, you know, anything could be done in the field of computer science by writing code, but there has to be a reason to do it. And why someone would have done it. I may be misremembering this. I thought, what I'm remembering as being at the core of the board's decision was to say, there's evidence in the record that data types are proliferating. So that somebody with Wang would immediately understand that at any given moment in time, one is not likely to have all the data types. There's a virtue in not doing the lossless compression. Is that a fair description? Content independent. Content independent. That's why you have content dependent one because there are certain efficiencies. And so an ordinary skilled artisan would immediately think, let's figure out a way to see if there's a type that we're not getting out of the particular information in 108. And if we do have that way, then we're going to get a benefit of using content dependent rather than content independent. Right. So this is a very, very important point, this argument about proliferating data types. The structure, when you look at the flow diagram of Wang, and when you look at the testimony about how Wang operates, the reality is that proliferating data types would never cause a problem at Wang's step 108. They could maybe cause a problem at steps 106 or 107, but not 108. And let me explain from a factual standpoint why that is. So what Wang does is it starts with an entire file and that file may be composed of a single data type or it may be composed of multiple data types. If it's a single data type, that's called a simple file. And if it's multiple data types, then it's a compound file. So let's suppose that we have a scenario with this new kind of data that Wang has never seen before. It doesn't know anything about it. It's one of the proliferations. And it's a simple file. It's the single data type, right? At step 102, Wang will say, sorry, I don't know this data. It goes over to 104. Then it bypasses step 108, never reaches step 108. Now let's say conversely that you have a compound file and within that, the file extension is known to Wang. But within that, there's some data type in the compound file that is unknown to Wang, right? Now what happens? Well, Wang goes down to step 106. So it passes step 102 because it knew the extension, so it let it through. Then it goes to step 106 and it makes a determination. Is this file simple or is it compound? In our instance, it's compound. If it is compound, it has to now first go to step 107. And step 107 has a really important requirement that again undermines their whole theory and this argument, which is that step 107 says, take all of the individual data types in this compound file, break them apart pristinely so that there's not one bit of overlapping data between the separated segmented files so that you only have one data type per file. So you've taken the compound file, you've created perfect simple files, and now pass that on to step 108. In that process at step 107, their own expert admitted that Wang has to know what the data type of each section, each piece of the compound file in Wang is. It has to determine that. So if due to a proliferation of data types, somehow Wang were unable to grapple with some data type that were in the compound file, it would fail out at step 107. The file would not make its way to step 108, where Wang would then face the challenge of what do I do about this unknown type? And their own expert testified on that. And so this notion of trying to use the idea of proliferating data types that would stymie Wang doesn't get them to the combination of 108. At best, it indicates a potential failure at step 107. It doesn't give a person of steel in the art a reason to put in a solution to unknown data types at step 108. And again, there's testimony on that. And the challenge with the board's decision is that it does not address these points. It doesn't consider these arguments. These arguments were made in great detail below. And in the first argument of the day, Judge, I heard you say that it's true that the decisions of administrative agencies don't need to spell out every single thing that they consider and address every little argument. But there are numerous instances where the silence as to key issues that are of significance is a basis for error. And our briefing has been all along that this is one of those situations. OK. I think we're out of time. Quickly, when we start going back to the first argument. I'll give you two minutes. Mr. Bell. Good afternoon. May it please the court. I'd like to start with my colleague's last argument there in which he said that there was, at Wang step 108, it wouldn't be able to fail. In other words, it would always be able to recognize data types at step 108. And the fact is the board expressly considered that argument. If you look at page A22 and A23, the board walks through in meticulous detail Realtime's argument, including citing the very testimony that Realtime says supports its position. That's testimony from Dr. Prezer. You can see that at the very bottom line of 22, where it cites exhibit 2010. A few lines up, cites 2010. And then it goes to the next page. And in the second full paragraph, not only does it say we are not persuaded by patent owners' arguments at the beginning of the first full paragraph, but in the middle of the second full paragraph, it specifically calls out this argument. The board says, with respect to patent owners' argument, and I'm quoting here, that Wang never fails to recognize any data types. And it's talking about it at step 108 there. And then it goes on to give its reasons for rejecting that argument. And it had very good reasons for doing so. And the question here is not a question of law, respectfully to my colleague. It is a question of substantial evidence. And at these pages, pages 823 and 824, the board lays out very clearly why it saw a motivation to combine the Franachek reference with Wang to provide the fallback, if you will. What happens, and that's what all of these references are dealing with, is we would prefer to use a content dependent. OK. Does this depend on having identified data at step 108? Data types? The data types in Wang are only, the only step that talks about that is step 108. And so. Step 102 talks about recognizing file format, which is a subset of data type, right? Respectfully, no, your honor. So some clarity on that point might be helpful. A file format is a more general mechanism to look at whether you recognize something. So for example, the .doc or the .pdf or whatever it might be, that might give you a general sense of the file format. And Dr. Zeger's testimony. So you can be able to identify the file format without identifying the type of data is what you're saying? Precisely. It might collapse into the same thing if the file only contains one data type. OK, so it's step 102 that it hasn't been the case that all data types have been recognized, right? Not necessarily, no. So your theory is it's going up the chain. Exactly. And their theory is that 107 prevents it from getting to step 108. Is that correct? That is their theory as I understand it. But the board considered exactly that argument. They made this argument below, presented it in great detail. The board probed it at the oral hearing and ultimately disagreed with it. And there is substantial evidence to show, including from our expert, Dr. Creuzer. So to the extent my colleague suggests that this is somehow undisputed, that our expert admitted that there would always be, that it would never fail at step 108. That's simply not the case. And I would point the court, for example, to A7422 and 7423. And at those pages, and that's one of many examples, A7417 is another one. 7419 is another one. But I'll focus on 7422.  So absolutely, absolutely one of skill in the art would understand that at Wang's step 108, it might well fail to recognize data types. What lines are you looking at on page 7422? Do I have the right page? Yes, it's towards the bottom. OK. And specifically, it is line 23. OK. So the question was, and this was in Dr. Creuzer's deposition, so you say that a person of skill in the art would have read Wang to leave open the possibility that there might be unknown data types when you get to the bottom of that, as Your Honor said, the chain. The answer, absolutely yes. And if you go to the next page, he explains one of the reasons why that is. And on the next page, he talks about that proliferation of data types that Your Honor referenced a little while ago. Because if you're going to build a module that is trying to recognize data types, as Wang does in step 108, and there's a proliferation of data types, you're never going to be able to cover all data types that appear in the future. And so that's what he explains there. That's not his only reason, though. If you look at other pages, such as 7419, he gives a very specific example of how it could go through this entire chain and recognize the file format at step 102, break down the file in step 107, and nonetheless come out at 108 with unknown data types. And he uses the example of an HTML file. And I was trying to think of an analogy, and I sort of came up with the notion that you can recognize something's a bus. You can take out all the kids and line them up. You don't necessarily recognize each of the kids. And I think that's kind of what he's getting at there. And certainly, when you step back to the level of review we're dealing with here, this provides more than substantial evidence for the board's decision. And the board went through, again, on pages A23 and 24 and gave at least four pieces of evidence that support its decision for why there would be unknown data types at step 108. The first is the Franischek reference. The Franischek reference itself is very clear. It says, if you're trying to do content-dependent compression and you don't have a known data type, you could get in real trouble because it could be catastrophic if you lose one bit of data as to certain data types. So in other words, if you can't figure out the data type, you better use something safe. That's what Franischek is saying. And so for that reason alone, there would be a motivation to sweep that in and connect the dots to Wang step 108. But the board doesn't stop there. It goes on and says, and Dr. Zeger, a patent owner's expert, testifies that there's a proliferation of data types. That's the point we were discussing earlier. It goes on to say, Wang itself, in a general sense, at step 102, although not directly applicable, in a general sense, Wang itself recognizes that there's this problem. If you encounter something unknown, there it's talking about file format, but the underlying principle is the same. If it's something unknown, you better use a safe compression method. That provides further support. And then finally, the testimony of Dr. Brazier, in particular, paragraph 86 of his declaration, where he walks through all of this evidence and says, at the end of the day, a person of ordinary skill would understand that you get to step 108 and there might be unknown data types. He even gives one example, and that is the Matsubara reference, which it's now, just to be clear, it's undisputed that that combination is proper. That was heavily disputed below. But here, there's no dispute that Matsubara is used at step 108 to implement the how. In other words, how do you recognize the data types? And Dr. Cresare here says, you might, at the end of doing that, using Matsubara, you might have an unknown data type. The board credited that, the board found that, and that, we submit, is ample substantial evidence. And do I take it that in Wang itself, which is not a very long document, there is nothing that says, when you get to what has now been labeled 107, if the decomposition process doesn't recognize some child in the bus, that I think Mr. Neruzzi said, the process ends rather than goes to 108? That there's nothing in this description that says it ends rather than continues? No, absolutely not. Unless the court has further questions. OK, thank you, Mr. Mel. Thank you. Thank you. Is that right, by the way, Mr. Neruzzi, that if you look just at Wang itself, there's nothing that says, if box 107 fails to recognize some portion of the overall file, the whole process stops? So Wang does not contemplate any of its steps failing. And it doesn't discuss what happens if any of them do. But the testimony from the opposing experts was that Wang would have to know how to recognize the data type to succeed at step 107. And so if Wang is not performing step 107 as taught in Wang, then how can we go to step 108 in Wang? We're in a different world now. We're in a different algorithm. It's a different flow chart. But he also testified that going on to step 108, you were going to have unrecognized data types, right? Their contention was that our next step was their testimony. Whose testimony? Their expert. Their expert did not say that. Their expert said the opposite. Their contention was that our expert said that, that Dr. Zeger on our side admitted that. And that's incorrect. The testimony they pointed you to in the record at appendix 7422, I believe it was, from our expert, is just talking about whether there can be a situation in Wang where Wang does not recognize the data type. But he is talking about step 107, where the decomposition is happening, or step 102, where the file format is being recognized. If you look at that testimony, there's no mention of step 108, nor is that in any of the sort of preface to the question. And that's the whole point. And on this, I would direct you to the record below where our expert, Dr. Zeger, put in a declaration afterwards explaining this and explaining that it's never been his position that at step 108 there can be a failure of data type recognition. But what about, I don't know, their expert's declaration at paragraphs 84, 85, and 86? Why isn't that substantial evidence to support how Wang works and what Wang is missing and how Wang works with respect to step 108 and step 102 and why it is that somebody would look to Mats Vara? Okay, so Mats... I see an explanation here in their expert report, so I want to know why you think that isn't substantial evidence. The flaw with the explanation in their expert report is exactly what we exposed in the deposition and have been briefing, namely that all the expert says is he puts forth the predicate condition. The predicate condition that if and when Wang were to fail at step 108, then someone would be motivated to look to this approach and frame a check. But he never gives any evidence that in any instance, Wang would fail at step 108. And then on deposition, he admitted Wang itself never suggests that. A person of steel in the art would have no reason to believe that and that if Wang had a data type recognition problem, it would happen at step 107 before step 108. And so there's no evidence in his declaration that step 108 could actually lead to a failure. I just want to add one critical last point, which is my colleague pointed to Appendix 68 in the board's decision where he said that the board addressed our argument that this data type recognition can't happen at step 108. The board did not address our argument. The board said, quote, with respect to patent owner's argument that Wang never fails to recognize any data types, comma, Franichek recognizes the issue and teaches the use of a default compression algorithm if a data type is not recognized. That's the entire basis of our appeal, that the holding of the board's decision— Okay, I think we're out of time. Thank both counsel. The case is submitted. And that concludes our session.